UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TIMOTHY HARRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No.: |
| v. | ) |
| | ) |
| REGAL-BELOIT AMERICA, INC., | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

Plaintiff, Timothy Harris, by and through his attorneys, NACHTLAW, P.C., brings this action against Defendant Regal-Beloit America, Inc., and hereby alleges as follows:

**INTRODUCTION**

1. Plaintiff TIM HARRIS brings this civil rights action pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 623(a)(1) ("ADEA"), to remedy illegal discrimination and retaliation perpetrated by Defendant.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 626(c) (ADEA); 28 U.S.C. § 1331 (federal question jurisdiction) and § 1343(a)(4) (jurisdiction over civil rights claims).

3. This Court also has jurisdiction of all claims pled herein pursuant to 28 U.S.C. §1332 as there is diversity of citizenship between the parties and the matter in controversy exceeds $75,000, exclusive of costs, interests, and attorney fees.

4. Venue is proper in the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's claim occurred within Fort Wayne, Indiana, located within this judicial district.

5. Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination on the basis of his age and retaliation. Plaintiff received his notice of right to sue on or about November 30, 2020.

## PARTIES

6. Plaintiff Tim Harris is a former employee of Regal Beloit America, Inc. and a resident of Indiana.

7. Defendant Regal Beloit America, Inc. ("Regal") is a Wisconsin corporation with its principal place of business in Beloit, Wisconsin and doing business in Allen County within this judicial district.

## FACTUAL ALLEGATIONS

8. At the time relevant to this action Plaintiff was fifty-nine (59) years old.

9. Plaintiff began working for General Electric Aircraft Engines as a Contract Administrator in 1987.

10. By 2001, Plaintiff was a Manager of Global Sourcing in General Electric's Electric Motor division.

11. In 2005, Regal acquired General Electric's Electric Motors division and Plaintiff joined Regal as a Director of Global Sourcing.

12. Over his thirty-year career, Plaintiff always received high performance ratings and was consistently promoted to positions of greater responsibility.

13. Plaintiff held several executive level positions at Regal, most recently as Vice President of Sales for Regal's Commercial and Industrial Group.

14. As Vice President of Sales, Plaintiff oversaw approximately 800 Million dollars in sales each year.

15. Plaintiff regularly met defined sales and performance goals, leading two years of consistent sales growth in 2017 and 2018.

16. Starting in 2019, Regal began a reorganization of its various business units.

17. As part of the reorganization Regal wanted to split the Commercial and Industrial Group apart.

18. Plaintiff's supervisor for the last 10 years, Mike Wickiser was replaced by Scott Brown.

19. In April 2019, Regal's CEO, Mark Gliebe, retired.

20. He was replaced by Louis Pinkham, who is in his forties.

21. Around this time, Plaintiff was approached by the President of Regal's Climate Group, John Kunze, about becoming Vice President of Sales for the Climate Group.

22. Brown blocked the move, allegedly because Plaintiff was too valuable in his existing role overseeing the ongoing reorganization of the former Commercial and Industrial Group.

**Regal Demotes Plaintiff as Part of a Scheme to Replace Him and Other Older Executives with Younger Workers**

23. In January 2020 Regal held its annual leadership meeting.

24. Plaintiff met with Brown and Vice President of Human Resources for the Commercial and Industrial Group Dennis Mikulecky to discuss the progress of the ongoing reorganization.

25. Brown directly raised Plaintiff's age as a topic of discussion.

26. Despite the fact Plaintiff was fifty-eight years old, Brown told Plaintiff he was nearing the end of his career and had only a "couple" years left at Regal.

27. Surprised and concerned, Plaintiff made clear to Brown and Mikulecky he desired to remain at Regal and in the workforce.

28. Brown indicated his own intention to retire soon, and directly told Plaintiff he wanted to place a younger worker into Plaintiff's position to train and groom a successor.

29. Brown told Plaintiff Regal's new CEO, Pinkham, had directed Brown and other group presidents to bring "younger talent" into key roles.

30. These comments reflected Brown and other key Regal decisionmakers' intention and propensity to evaluate employees and make hiring and retention decisions based on age.

31. Brown ultimately assured Plaintiff there would remain a leadership level role for him within the Commercial or Industrial Groups as the reorganization continued.

32. But shortly thereafter, Regal followed through with its intention to replace Plaintiff and other older executives with "younger talent."

33. In early March 2020, for the first and only time in decades, Plaintiff received the lowest possible performance rating for two of three categories in his 2019 annual performance review, and the lowest possible overall rating.

34. Then, on March 26, 2020, Plaintiff was abruptly told by Brown and Mikulecky that his current position was being eliminated entirely.

35. Brown and Mikulecky told Plaintiff he could retire, despite Plaintiff being only fifty-eight.

36. Plaintiff expressed a desire to continue on at Regal and remain in the workforce.

37. Brown and Mikulecky told Plaintiff there was no longer a position for him in the Commercial or Industrial Groups.

38. Instead, Brown and Mikulecky told Plaintiff he would need to speak with Regals' Vice President of HR for the Climate Group, Tammy Randall, about what position at Regal was available for him.

39. In a subsequent conversation with Randall, Plaintiff learned he was being demoted to a "Key Account Manager" position in Regal's Climate Group.

40. The Key Account Manager position was a significant demotion, essentially to a sales representative.

41. Plaintiff's total compensation would be slashed by over 60%.

42. Plaintiff's managerial responsibilities would be entirely eliminated.

43. Despite claiming Plaintiff's previous Vice President of Sales role was being eliminated, in actuality Regal divided Plaintiff's responsibilities between Jared Koch, who was approximately 44 years old, John Sajovic, who was approximately 52 years old, Ted Gruhn, who was approximately 49, Mike Catania, who was approximately 54 years old, and Rommel Redi, who was in his 50s.

44. Koch was assigned Plaintiff's responsibility for direct employee sales despite never having held a sales or sales leadership position.

45. Sajovic was assigned Plaintiff's responsibility for overseeing Canadian sales and strategic distribution direct accounts.

46. Gruhn was assigned numerous direct reports in the industrial sales team previously supervised by Plaintiff.

47. Gruhn was also given a title remarkably similar to Plaintiffs – Vice President of Industrial Sales.

48. Catania was assigned Plaintiff's responsibilities in relation to commercial sales operations.

49. Regal created a new Vice-Presidential level position in the Commercial Group for Redi, similar to Plaintiff's "eliminated" role, and he was assigned responsibility for overseeing numerous direct reports previously supervised by Plaintiff.

50. With the exception of Catania and Redi, all of these employees were much younger than Plaintiff, and Koch and Gruhn were over ten years younger.

51. Catania was laid off only two months later.

52. Upon information and belief, Plaintiff's responsibilities for commercial sales were ultimately absorbed by less qualified or similarly qualified workers significantly younger than Plaintiff.

53. Redi also left Regal mere months later.

54. Upon information and belief, his role was also filled with a less qualified or similarly qualified worker significantly younger than Plaintiff who ultimately absorbed Plaintiff's leadership responsibilities as a Vice President in the Commercial Group.

55. The elimination of Plaintiff's position and his subsequent demotion were therefore a pretext to replace him with younger, less qualified or similarly qualified employees.

56. Plaintiff's demotion constituted an adverse employment action reflecting disparate treatment based on his age in violation of the ADEA.

57. A statistical analysis of the ages of the employees terminated by Regal during the 2019-2020 reorganization provides further evidence of age discrimination.

58. As of February 2020, over 80% of employees selected for termination were over forty.

59. Over 65% of employees selected for termination were over fifty.

60. Nearly double the proportion of Regal employees over fifty were terminated as the proportion of Regal employees under forty who were terminated.

61. These statistics do not account for older workers like Plaintiff, who were not terminated but were subjected to adverse employment actions such as demotion and/or were pushed into early retirement.

62. These statistics reflect that older employees at Regal were targeted for termination, or in Plaintiff's case, demotion, based on age, as part of a deliberate scheme to replace older executives with younger executives.

**Regal Retaliates Against Plaintiff for Opposing Age Discrimination**

63. In April 2020, Plaintiff sought to be considered for other executive-level leadership positions comparable to his former position in a series of conversations with Mikulecky and Randall.

64. Plaintiff asked to be considered for a Director of Sales position in the Climate Group, a Regional Director position in the Power Transmission Group, and a Director of Commercial HVAC and Pump position in the Commercial Group, all of which were positions he was well qualified for in all respects.

65. But Plaintiff was again told, this time by Ms. Randall, that there was "pressure" from Regal's leadership to bring in "fresh talent."

66. Randall stated it would not make sense to place Plaintiff in a leadership position when he would just retire soon.

7

67. Plaintiff emphasized he had no intention of retiring, and expressly committed to working for a minimum of five additional years if required.

68. But Randall told Plaintiff "the perception" around him was that he had only "a couple more years."

69. Randall encouraged him to see the "writing on the wall."

70. At this point Plaintiff directly spoke out in opposition to Regal's discriminatory hiring and retention practices and informed Randall about Scott Brown's conversation with Plaintiff about his age.

71. Plaintiff stated this was "a pretty dangerous conversation" in reference to illegal age discrimination.

72. Randall agreed.

73. But, upon information and belief, Randall took no action to address or investigate Plaintiff's allegations of discrimination.

74. Rather, Regal refused to consider Plaintiff for any of the leadership positions discussed.

75. Upon information and belief, Regal filled each position with less qualified or similarly qualified workers significantly younger than Plaintiff.

76. Defendant's failure to hire Plaintiff was the result of disparate treatment based on his age, in violation of the ADEA.

77. Defendant's failure to hire Plaintiff was in retaliation for his opposition to age discrimination, in violation of the ADEA.

**Plaintiff is Constructively Discharged**

78. Plaintiff was eventually faced with an ultimatum – accept the Key Account

Manager position in the Climate Group or be terminated.

79. Plaintiff accepted out of fear of termination, and on May 1, 2020, Regal effectuated Plaintiff's demotion.

80. Plaintiff immediately discovered the Key Account Manager position was not well-defined and lacked defined duties.

81. The sales accounts to which Plaintiff was assigned were historically underperforming.

82. Having been stripped of meaningful responsibilities, his pay slashed, and set up to fail, Plaintiff was forced to retire on June 8, 2020.

83. Plaintiff's retirement constitutes a constructive discharge due to his age and protected activity, in violation of the ADEA.

84. Had it not been for the demotion and subsequent retaliation, Plaintiff would have worked at Regal for several more years.

**Regal Refuses to Allow Plaintiff to Accelerate Vesting of his Stock Options in Retaliation for Opposing Discrimination**

85. In further retaliation for his opposition to age discrimination, Regal did not allow for full accelerated vesting of Plaintiff's earned stock options.

86. Other employees in a similar position, who retired around the same time but did not complain about Regal's discriminatory practices were allowed full accelerated vesting and otherwise treated differently and more favorably than Plaintiff.

87. The conduct of Defendant, as alleged in this action, constitutes willful violations of the ADEA.

**COUNT I**
**AGE DISCRIMINATION – DISPARATE TREATMENT IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT 29 U.S.C. § 621** *et seq.*

88. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

89. At all relevant times, Defendant was an employer with more than 20 employees, and Plaintiff was an employee covered by and within the meaning of the Age Discrimination in Employment Act.

90. Plaintiff is a member of a protected group because of his age: fifty-nine (59) years old at the time of his demotion and constructive discharge.

91. Defendant, by its agents, representatives, and employees, was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

92. Plaintiff was subjected to an adverse employment action when he was demoted in May 2020.

93. But for Plaintiff's age, he would not have been demoted.

94. Plaintiff was subjected to a second adverse employment action when he was constructively discharged in June 2020.

95. But for Plaintiff's age, he would not have been constructively discharged.

96. Defendant's actions constituted unlawful discrimination against Plaintiff because of his age. 29 U.S.C. § 623(a).

97. Defendant's actions in violation of the ADEA were willful.

98. As a direct and proximate result of Defendant's violation of the ADEA as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

99. As a further direct and proximate result of Defendant's violation of the ADEA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

100. Defendant's actions were undertaken with callous disregard, recklessness, and indifference to Plaintiff's federally protected civil rights, entitling him to punitive damages.

## COUNT II
### AGE DISCRIMINATION – FAILURE TO HIRE IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT- 29 U.S.C. § 621 *et seq.*

101. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

102. At all relevant times, Defendant was an employer with more than 20 employees, and Plaintiff was an employee covered by and within the meaning of the Age Discrimination in Employment Act.

103. Plaintiff is a member of a protected group because of his age: fifty-nine (59) years old at the time of Defendant Regal's failure to hire Plaintiff.

104. Plaintiff was well qualified for the positions which he sought.

105. Plaintiff was not hired, and not even considered, for multiple positions for which he was qualified.

106. Instead, Defendant hired much younger, less qualified or similarly qualified individuals who were more than ten years younger than Plaintiff.

107. Defendant, by its agents, representatives, and employees, was predisposed to discriminate on the basis of age and acted in accordance with that predisposition.

108. Defendant failed to hire Plaintiff because of his age.

109. Defendant's actions constituted unlawful discrimination against Plaintiff because of his age. 29 U.S.C. § 623(a).

110. Defendant's actions in violation of the ADEA were willful.

111. As a direct and proximate result of Defendant's violation of the ADEA as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

112. As a further direct and proximate result of defendant's violation of the ADEA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

113. Defendant's actions were undertaken with callous disregard, recklessness, and indifference to Plaintiff's federally protected civil rights, entitling him to punitive damages.

## COUNT III
## RETALIATION IN VIOLATION OF THE AGE DISCRIMINATION IN EMPLOYMENT ACT- 29 U.S.C. § 621 *et seq.*

114. Plaintiff incorporates by reference each preceding Paragraph as though fully restated herein.

115. At all relevant times, Defendant was an employer with more than 20 employees, and Plaintiff was an employee covered by and within the meaning of the Age Discrimination in Employment Act.

116. Plaintiff engaged in protected activity under the ADEA in opposing age discrimination.

117. Plaintiff was not hired, and not even considered, for multiple positions for which he was qualified.

118. By refusing to hire Plaintiff, Defendant subjected Plaintiff to retaliation because of his opposition to age discrimination, said acts being made unlawful by the ADEA, 29 U.S.C. § 621, *et seq*.

119. Plaintiff was subjected to a second act of retaliation when Defendant refused to accelerate vesting of Plaintiff's stock options upon retirement.

120. Other employees in a similar position, who retired around the same time but did not complain about Defendant's discriminatory practices were granted accelerated vesting of their options and otherwise treated differently and more favorably than Plaintiff.

121. But for Plaintiff's opposition to age discrimination, Defendant would not have refused to fully vest Plaintiff's stock options upon retirement.

122. As a direct and proximate result of Defendant's violation of the ADEA as aforestated, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment and the physical effects associated therewith, and will so suffer in the future.

123. As a further direct and proximate result of Defendant's violation of the ADEA, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits, and a loss of and impairment of his earning capacity and ability to work, and will so suffer in the future; he has been required to employ the services of an attorney to bring this lawsuit and will suffer additional damages in the future.

124. Defendant's actions were undertaken with callous disregard, recklessness, and indifference to Plaintiff's federally protected civil rights, entitling him to punitive damages.

## Relief Requested

WHEREFORE, Plaintiff Tim Harris prays that this Honorable Court grant the following remedies:

a. Declare that the aforementioned practices and actions of Defendant constitute unlawful employment practices in violation of The ADEA;

b. Award Plaintiff all lost wages, past and future, to which he is entitled;

c. Award Plaintiff reinstatement or front pay;

d. Award Plaintiff compensatory damages;

e. Award Plaintiff punitive and exemplary damages;

f. Award Plaintiff reasonable attorney's fees, costs, and interest;

g. Award such other relief as this Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment against Defendant and all relief requested in this complaint.

Respectfully submitted,

/s/ Samuel L. Estenson
Samuel L. Estenson (P82414)
David A. Nacht (P47034), (*pending admission in ND of Indianna*)
**NACHTLAW, P.C.**
101 North Main St., Suite 555
Ann Arbor, MI  48104
(734) 663-7550
sestenson@nachtlaw.com
dnacht@nachtlaw.com

Jeffrey A. Macey (28378-49)
**MACEY SWANSON HICKS & SAUER**
445 N. Pennsylvania St., Suite 401
Indianapolis, IN  46204
(317) 637-2345

jmacey@maceylaw.com

Dated: February 19, 2021 *Attorneys for Plaintiff*

# DEMAND FOR JURY TRIAL

Now Comes Plaintiff, Tim Harris, by and though his attorneys, NACHTLAW, P.C. and hereby demands a trial by jury in the above captioned matter.

Respectfully submitted,

/s/ Samuel L. Estenson
Samuel L. Estenson (P82414)
David A. Nacht (P47034), (*pending admission in ND of Indianna*)
**NACHTLAW, P.C.**
101 North Main St., Suite 555
Ann Arbor, MI 48104
(734) 663-7550
sestenson@nachtlaw.com
dnacht@nachtlaw.com

Jeffrey A. Macey (28378-49)
**MACEY SWANSON HICKS & SAUER**
445 N. Pennsylvania St., Suite 401
Indianapolis, IN 46204
(317) 637-2345
jmacey@maceylaw.com

Dated: February 19, 2021 *Attorneys for Plaintiff*